1
2
3          UNITED STATES DISTRICT COURT
4          DISTRICT OF NEVADA
5                    * * *
6   CURTIS LUX, *et al.*,                   Case No. 2:23-cv-00839-MMD-NJK
7                        Plaintiffs,         ORDER
         v.
8
    JORDANA BUCHANAN, *et al.*,
9
                         Defendants.
10

11  **I.    SUMMARY**

12      Plaintiffs[1] sued Defendants[2] mostly for alleged failure to pay overtime and forging

13  payroll records, but as to Bates, for tortious discharge and conversion as well. (ECF No.

14  23.) Before the Court are several motions: (1) Defendants' two motions to dismiss (ECF

15  Nos. 28, 31);[3] (2) Plaintiffs' motion to strike Defendants' defensive pleadings and enter a

16  default against them based on their purported violation of principles of judicial estoppel

17  (ECF No. 121),[4] along with two motions regarding the timeliness of Defendants' response

18  to that motion (ECF Nos. 125, 129);[5] and (3) Defendants' motion for summary judgment

19  on all of Plaintiffs' claims that alternatively and additionally seeks dismissal of most of the

20

21  _____

22      [1]Curtis Lux, Justin Hymes, Kathy Wadkins, Aaron Mathis, Michael Bates, Rick
    Gordon, and Ishmel Byrd.

23      [2]Southwest Concrete Pumping, LLC ("Southwest"), Allan Benavides, Lillibeth
24  Benavides, Jordana Buchanan, Zachary Buchanan, AEB Enterprises, LLC, ACJ
    Consulting, LLC, and Top Water Holdings, LLC.

25      [3]Plaintiffs responded (ECF Nos. 36, 48) and Defendants replied (ECF Nos. 39,
    54).
26
        [4]Defendants responded (ECF No. 124) and Plaintiffs replied (ECF No. 127).
27
        [5]Defendants responded to Plaintiffs' motion (ECF No. 131) and Plaintiffs replied in
28  support of it (ECF No. 133). Plaintiffs responded to Defendants' motion (ECF No. 132)
    and Defendants replied in support of it (ECF No. 134).

1   defendants because there either are no allegations against them or they did not employ

2   Plaintiffs (ECF No. 122).[6] As further explained below, the Court will consider Defendants'

3   response to Plaintiffs' motion to strike but deny that motion, mostly grant Defendants'

4   motion for summary judgment, and deny Defendants' motions to dismiss as moot

5   considering the Court's resolution of Defendants' motion for summary judgment.

6   Following this order, one claim remains for trial against one Defendant—Bates' tortious

7   discharge claim against Southwest.

8   **II.   BACKGROUND**

9        Plaintiffs all used to work for Southwest, a company owned by Alan and Lillibeth

10  Benavides that provides, "concrete pumping, conveying, and material placement, in

11  residential and commercial construction projects in Nevada and in surrounding states."

12  (ECF No. 122-1 at 1-2.) As part of its business, Southwest moves large concrete pumping

13  equipment on large trucks on public roads both in Nevada and other states. (*Id.* at 2, 6.)

14       As noted, Plaintiffs primarily allege that they were not paid overtime in violation of

15  federal and state law and were otherwise not paid the proper amounts for the work they

16  performed. (ECF No. 23 at 12-19, 20.) However, Bates also alleges that Southwest

17  tortiously discharged him (*id.* at 19-20), and that Alan Benavides converted his expensive

18  tools when Alan Benavides filed an interpleader action about the tools and accordingly

19  kept them from Bates for some time (*Id.* at 19-20, 20-21).

20       The Court previously granted Defendants' motion to dismiss an earlier iteration of

21  Plaintiffs' complaint at a hearing but granted Plaintiffs leave to amend (ECF No. 22), so

22  the operative complaint is the second amended complaint (ECF No. 23).

23  **III.   DISCUSSION**

24       The Court first addresses Plaintiffs' motion to strike and enter defaults because

25  Plaintiffs seek case-dispositive sanctions. But the Court must first address the parties'

26  contentions regarding Defendants' late-filed response to that motion, as Plaintiffs also ask

27  the Court to strike or otherwise not consider it. So the Court does that first of all. The

28

---

[6]Plaintiffs responded (ECF No. 123) and Defendants replied (ECF No. 130).

Court then addresses Defendants' motion for summary judgment, and finally explains why the Court's ruling on Defendants' motion for summary judgment renders their motions to dismiss moot.

### A.    Motions Regarding Untimely Response

Defendants filed their response to Plaintiffs' motion to strike their answer and motions to dismiss and enter defaults against them late. (*Compare* ECF No. 121 (filed May 13, 2024) *with* ECF No. 124 (filed June 3, 2024).) *See also* LR 7-2(b) (providing that responses to motions except those for summary judgment are due 14 days after service of the motion). Plaintiffs, primarily appealing to the Court's inherent powers, moved to strike Defendants' response because it was filed late and Defendants had not moved for an extension of time, also noting that LR 7-2(d) provides in pertinent part that a failure to timely oppose a motion can be construed by the Court as consent to grant it. (ECF Nos. 125, 126 (corrected version).) Defendants, in turn, followed that motion up with a motion for extension of time *nunc pro tunc*, arguing that their late response was attributable to excusable neglect on Defendants' counsel's part because he was dealing with a difficult family situation. (ECF No. 129.)

Plaintiffs' counsel, however, did not accept that explanation and move on. Plaintiffs instead opposed Defendants' retroactive motion for extension of time, arguing based on records from state court proceedings involving Defendants' counsel's family that Defendants' counsel was lying to the Court about his family situation that caused him to miss the response deadline, and emphasizing that, under Federal Rule of Civil Procedure 6(b)(1)(B), a party must move for an extension of time before the applicable deadline expires. (ECF No. 132.)

Plaintiffs' counsel's approach here contravenes several important principles in the Federal Rules of Civil Procedure and the Court's Local Rules—and is otherwise unpersuasive. To start, Local Rule LR 1-1(b) provides that attorneys have an obligation to work cooperatively toward the prompt completion of each case while minimizing litigation expenses. And Local Rule LR 1-1(c) states that the Court expects a high degree

of professionalism and civility from attorneys. Moreover, Fed. R. Civ. P. 1 directs that the federal rules, "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." *Id.* Even more generally, "[p]ublic policy favors disposition of cases on the merits." *Pagtalunan v. Galaza*, 291 F.3d 639, 643 (9th Cir. 2002).

By filing a motion to strike Defendants' belated response and then opposing Defendants' retroactive motion for an extension of time instead of first reaching out to Defendants' counsel to work out a resolution to the issue of Defendants' late response together, Plaintiffs' counsel was not acting cooperatively with an eye towards minimizing litigation expenses. Instead, both sides wrote many, often repetitive, pages regarding a minor issue that they presumably either have, or are going to, charge their clients for. This is precisely the sort of conduct that both the Federal Rules and the Court's Local Rules seek to deter. Moreover, Plaintiffs appear to seek strategic advantage here by asking the Court not to consider the merits of Defendants' opposition to their motion to strike and for dispositive sanctions and instead grant it as unopposed. This contravenes the public policy favoring disposition of cases on their merits. And because of that public policy interest, the Court prefers to consider Defendants' response to Plaintiffs' motion before ruling on it.

In addition, calling Defendants' counsel a liar instead of accepting an explanation for his excusable neglect based on difficult family circumstances does not reflect the professionalism and civility that the Court expects of attorneys who practice before it, and which the Court's Local Rules demand. *See* LR 1-1(c). Judge Koppe has repeatedly admonished Plaintiffs' counsel for his failure to comply with the Court's Local Rules or otherwise litigate in the collegial manner expected of attorneys in this District. (ECF Nos. 25, 26, 34, 52.) Given this history, the Court finds it surprising that Plaintiffs' counsel would multiply proceedings regarding a missed deadline without explaining any real prejudice to his clients because of Defendants' six-day delay in filing their response. But it seems the Court must admonish Plaintiffs' counsel to change his approach to this case and

4

litigate it in a collegial and professional manner with an eye towards minimizing expenses going forward, while paying closer attention to the Court's Local Rules. Said otherwise, Plaintiffs' counsel's approach to the issue of Defendants' late response is a good example of his unacceptable approach to this case. The Court expects him to proceed differently going forward.

Plaintiffs' arguments regarding Defendants' missed deadline are also unpersuasive on their merits. To start, Plaintiffs argue that Defendants' motion for extension of time to file their response *nunc pro tunc* is procedurally defective under Fed. R. Civ. P. 6(b)(1)(B) because they filed it after missing the deadline. (ECF No. 132 at 9.) However, Fed. R. Civ. P. 6(b)(1)(B) provides that the Court may extend a deadline for good cause shown, "on motion made after the time has expired if the party failed to act because of excusable neglect." *Id.* Thus, the rule allows Defendants to do what they did here—file a motion for extension of after the deadline has expired. Second, Plaintiffs argue the Court does not even need to get to the excusable neglect analysis because Defendants filed their motion for extension of time after the deadline expired, but that argument is incorrect for the same reason described immediately above. (ECF No. 132 at 10.)

When it comes to arguing that Defendants have not shown excusable neglect, Plaintiffs argue Defendants' counsel is trying to mislead the Court because the difficult family circumstances presented in Defendants' counsel's declaration happened earlier than he implied in his declaration and accompanying motion. (ECF No. 132 at 10-11.) But this argument contains the embedded assumption that the difficult family circumstances described in Defendants' counsel's declaration (the Court does not describe them here out of respect for his and his family's privacy) should have no effect on Defendants' counsel once a few months have passed. Given the events described in Defendants' counsel's declaration, that is simply not a reasonable assumption. And the Court also finds persuasive Defendants' point in reply that Plaintiffs identify no prejudice that they suffered from Defendants' delay in filing their response. (ECF No. 134 at 4.) Perhaps most

of all, the Court agrees with Defendants' counsel that, "[i]t seems unconscionable that Plaintiffs' counsel would so vigorously resist the pending motion to extend time for 4 business days in a way that forces Defendants' counsel to reveal more distressing personal matters." (*Id.* at 2.)

The reasons that Defendants' counsel presents in his motion (ECF No. 129), accompanying declaration (*id.* at 7-8), and reply (ECF No. 134) constitute excusable neglect sufficient to excuse the tardiness of Defendants' response under Fed. R. Civ. P. 6(b)(1)(B). The Court will accordingly consider Defendants' response in ruling on Plaintiffs' motion to strike Defendants' defensive pleadings and enter defaults against them. As such, Plaintiffs' motion to strike Defendants' response (ECF No. 125) is denied and Defendants' motion for an extension of time *nunc pro tunc* (ECF No. 129) is granted.

### B.   Motion to Strike and Enter Default

Having resolved to consider Defendants' response to this motion, the Court turns to its merits. Defendants filed still-pending motions to dismiss as to some of Plaintiffs' claims as against some Defendants, and an answer as to the remaining claims and Defendants. (ECF Nos. 28, 31, 62.) Invoking the principle of judicial estoppel, Plaintiffs move to 'dismiss' or strike (Plaintiffs use both terms) these documents and for the Court to enter a default against all Defendants because Defendant Allan Benavides allegedly represented to his benefit that Defendant AEB Enterprises, LLC did business as Southwest in prior state-court actions and related insurance claims but testified at his deposition in this case that AEB Enterprises, LLC and Southwest are separate entities. (ECF No. 121.) Plaintiffs otherwise state that Mr. Benevides has taken inconsistent positions about the ownership of Southwest in the past, that he did not mention at his deposition that a cellphone was crushed or destroyed, and some documents had been stolen from Southwest, even though he confirmed he was aware of some instructions regarding spoilation and his attorneys later took those positions in discovery. (*Id.* at 9-11.) However, Plaintiffs ultimately focus their judicial estoppel argument on their contention that Mr. Benevides represented in prior cases that AEB Enterprises, LLC and Southwest

1 | were the same entity whereas in this case he has taken the position that they are distinct.

2 | (*Id.* at 11-16.) And from this argument, Plaintiffs maintain that "Defendants and Allan

3 | Benavides should be Judicially Estopped from continuing in the defense of the instant

4 | action." (*Id.* at 17.)

5 |     Defendants primarily respond that Plaintiffs have not made the necessary

6 | connection between their judicial estoppel argument and the remedy they seek, which is

7 | basically summary judgment in their favor. (ECF No. 124 at 8, 12-13.) Defendants

8 | otherwise argue that they did not obtain benefits or prior success for representing in prior

9 | cases that AEB Enterprises, LLC did business as Southwest, and those prior

10 | representations were mistakes, not intentional efforts at deception, rendering the judicial

11 | estoppel doctrine inapplicable here. (*Id.* at 12.) And Defendants finally contend that the

12 | question of whether AEB Enterprises, LLC ever did business as Southwest was both

13 | irrelevant to the prior cases because the involved insurers made partial payments on the

14 | pertinent claims and is irrelevant in this case because there is no dispute that Plaintiffs

15 | were employed by Southwest and seek allegedly unpaid wages from that entity. (*Id.* at 3,

16 | 12.) The Court agrees with Defendants in pertinent part.

17 |     The Court will deny Plaintiffs' motion because they provide no legal basis for their

18 | requested remedy or make a connection between it and their judicial estoppel argument.

19 | It is indeed difficult for the Court to determine exactly what Plaintiffs are asking for in this

20 | motion other than judgment in their favor.

21 |     To the extent Plaintiffs are attempting to strike Defendants' motions to dismiss

22 | (ECF No. 121 at 1 (titling the motion a motion to strike defensive pleadings)), the Court

23 | denies that request to the extent they are implicitly invoking Rule 12(f); this rule only

24 | applies to pleadings and thus does not provide for a motion to strike motions other than

25 | pleadings. *See* Fed. R. Civ. P. 12(f) ("The court may strike from a pleading an insufficient

26 | defense or any redundant, immaterial, impertinent, or scandalous matter."); Fed. R. Civ.

27 | P. 7(a) (identifying "pleadings" as the complaint, answer, and reply to an answer, but not

28 | motions and other papers); *see also Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880,

885 (9th Cir. 1983); *Herb Reed Enters., LLC v. Fla. Ent. Mgmt., Inc.*, Case No. 2:12-cv-00560-MMD-GWF, 2014 WL 1305144, at *6 (D. Nev. Mar. 31, 2014) ("Under Rule 12(f) a court may strike from a pleading any redundant, immaterial, impertinent, or scandalous matter. However, motions to strike apply only to pleadings, and courts are generally unwilling to construe the rule broadly and refuse to strike motions, briefs, objections, affidavits, or exhibits attached thereto.") (citations omitted).

And to the extent that Plaintiffs are attempting to strike Defendants' answer, they could not obtain their requested remedy of a default against Defendants because Defendants only answered as to some claims and defendants (ECF No. 62), so striking that answer could only accord them partial relief, not the complete relief they apparently seek.

The Court also agrees with Defendants that Plaintiffs seem to seek summary judgment against all Defendants in their motion but do not cite or argue under the summary judgment standard. (ECF No. 124 at 12-13.) Plaintiffs accordingly proffer no legal authority that would allow the Court to grant them the remedy they seek in this motion. In addition, and alternatively, Plaintiffs' judicial estoppel argument focuses entirely on Alan Benavides and his purportedly inconsistent representations. (ECF No. 121.) So even if the Court were to overlook the numerous procedural issues with Plaintiffs' motion and somehow apply the judicial estoppel doctrine, logically, only Alan Benevides could be judicially estopped, not all Defendants in this case. Finally, Plaintiffs never explain how they are entitled to their requested remedy of "Defendants and Allan Benavides should be Judicially Estopped from continuing in the defense of the instant action" based on their judicial estoppel argument—much less proffer cogent argument supported by binding authority persuading the Court that it must grant them that remedy. (*Id.* at 17.) In sum, Plaintiffs' motion to strike Defendants' defensive pleadings and enter a default is denied.

### C.    Motion for Summary Judgment

Defendants move for summary judgment on each of Plaintiffs' claims and then certain Defendants move for dismissal from this case. (ECF No. 122.) For convenience,

1  the Court addresses the arguments presented in Defendants' motion in the order

2  Defendants present them.

3              **1.    RICO Claim**

4              Defendants first move for summary judgment on Plaintiffs' RICO claim asserted

5  against Southwest because employees signing timesheets for other employees so

6  employees could be timely paid is not forgery, and even if it was, that would only be one

7  predicate act, not the two required to support a RICO claim, and Plaintiffs have no

8  evidence that any injury flowed from the purported RICO violations in any event. (*Id.* at

9  12-14.) Plaintiffs primarily respond that they have alleged many predicate acts in their

10  operative complaint because there were many 'forged' signatures on payroll records,

11  block-quote many excerpts of Bates' deposition testimony where he is discussing his

12  belief that his payroll records were forged and argue that Plaintiffs were injured by payroll

13  records that someone else signed because they were deprived of overtime pay. (ECF No.

14  123 at 5-12.) The Court agrees with Defendants.

15             To start, Defendants contend in their motion that Plaintiffs have no evidence that

16  any employees of Southwest acted with fraudulent intent when they signed time sheets

17  on behalf of other employees. (ECF No. 122 at 13.) And Plaintiffs do not respond to this

18  argument or point to any evidence that any employee of Southwest acted with fraudulent

19  intent when they signed timesheets on behalf of other employees. (ECF No. 123 at 5-12.)

20  While Defendants do not cite any specific Nevada statutes outlawing forgery in their

21  motion (ECF No. 122 at 13), fraudulent intent is indeed an element of the specific forgery

22  statutes that appear most pertinent to allegedly falsified payroll records. *See, e.g.*, NRS

23  § 205.085 ("intent to defraud"); NRS § 205.090 ("with the intent to prejudice, damage or

24  defraud any person, body politic or corporate"); NRS § 205.095 ("with intent to injure or

25  defraud"). And Defendants may, as they have here, argue they are entitled to summary

26  judgment on a claim because Plaintiffs "cannot produce admissible evidence to support

27  [a] fact[.]" Fed. R. Civ. P. 56(c)(1)(B). Now that Defendants have asserted that Plaintiffs

28  have no evidence of fraudulent intent, Plaintiffs "may not rely on denials in the pleadings

but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Orr v. Bank of Am.*, 285 F.3d 764, 783 (9th Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Plaintiffs have not done that. They have not even addressed Defendants' lack of evidence of fraudulent intent argument.

These same principles also render much of Plaintiffs' argument in response to the RICO portion of Plaintiffs' motion irrelevant because they argue about the adequacy of the allegations in their operative complaint instead of pointing to any evidence. (ECF No. 123 at 5-7.) While that approach may suffice to oppose a motion to dismiss, it does not suffice to oppose a motion for summary judgment. Further, and as Defendants also point out (ECF No. 122 at 13 n.2), evidence that Plaintiffs point to regarding actions taken by Alan Benavides (ECF No. 123 at 8) are irrelevant to Plaintiffs' RICO claim because it is only asserted against Southwest Concrete Pumping LLC (ECF No. 23 at 12-14). Alan Benavides' predicate acts are not automatically attributable to Southwest.[7] In sum, Plaintiffs have proffered no evidence of fraudulent intent sufficient to establish a key element of forgery, their alleged predicate act.

Putting all of this together, Plaintiffs have proffered no evidence of a predicate act in opposition to Defendants' motion for summary judgment, so the only logical conclusion the Court can reach is that Defendants are entitled to summary judgment on Plaintiffs' RICO claim. Defendants' motion is accordingly granted as to Plaintiffs' RICO claim.

### 2.    Overtime Claim

Defendants next argue that Southwest is entitled to summary judgment on Plaintiffs' claim for unpaid overtime wages because Southwest is entitled to the Motor

---

[7]Plaintiffs sprinkle suggestions of alter ego throughout their operative complaint and briefing but never explicitly make any connection between Allan Benavides and Southwest in the pertinent section of their response brief, much less the combination of argument and evidence that could potentially permit the Court to hold Southwest liable for Allan Benavides' actions or omissions. (ECF No. 123 at 5-12.)

1   Carrier Act exemption to FLSA (the Fair Labor Standards Act) and analogous state laws.

2   (ECF No. 122 at 14-18.) But as to Plaintiff Kathy Wadkins specifically, Defendants argue

3   she is exempt from FLSA overtime requirements because she was an administrative

4   employee. (*Id.* at 17-18.) Plaintiffs do not respond to the substance of Defendants'

5   argument but instead note that Southwest's business license is for 'Construction-Non

6   Contractor,' argue Defendants did not raise the Motor Carrier Act exemption until after

7   the close of discovery, proffer some deposition testimony from Bates to the effect that he

8   was upset when he learned he was being paid a salary given the number of hours he was

9   working, and proffer one excerpt of deposition testimony from Kathy Wadkins describing

10  her job duties. (ECF No. 123 at 13-15.) The Court agrees with Defendants that Southwest

11  is entitled to the Motor Carrier Act exemption to FLSA, that Wadkins was an administrative

12  employee, and that Defendants are therefore entitled to summary judgment on Plaintiffs'

13  unpaid overtime claim because Southwest was not required to pay them overtime.

14          "The FLSA requires employers to pay overtime wages (1.5 times the regular hourly

15  wage) to any employee who works more than forty hours in a week." *Klitzke v. Steiner*

16  *Corp.*, 110 F.3d 1465, 1467 (9th Cir. 1997) (citing 29 U.S.C. § 207(a)). However,

17  employees whose qualifications and maximum hours of driving may be regulated by the

18  Secretary of Transportation are exempt from these requirements under what is known as

19  the Motor Carrier Act exemption. *See id.* "Whether an employee qualifies for the

20  exemption 'depends on both the class to which his employer belongs and on the class of

21  work involved in the employee's job.'" *Wright v. Jacob Transportation, LLC*, Case No.

22  2:15-cv-00056-JAD-NJK, 2019 WL 1446946, at *2 (D. Nev. Mar. 31, 2019) (citing 29

23  C.F.R. § 782.2(a)). More specifically, "[a]n employee is exempt under the MCA [Motor

24  Carrier Act] if he (1) is employed by an employer that is subject to the Secretary of

25  Transportation's jurisdiction, and (2) "engage[s] in activities of a character directly

26  affecting the safety of operation of motor vehicles in the transportation on the public

27  highways of passengers or property in interstate or foreign commerce within the meaning

28

1    of the [MCA]."' *Featherston v. Lazer Spot, Inc.*, Case No. 2:17-cv-01221-APG-GWF, 2018

2    WL 4088001, at *1 (D. Nev. Aug. 27, 2018) (citations omitted).

3    Defendants contend that all Plaintiffs except for Wadkins are subject to this

4    exemption. Defendants proffer Alan Benavides' declaration supported by several exhibits,

5    including a fact sheet published by the United States Department of Labor, to establish

6    Southwest's entitlement to the Motor Carrier Act exemption. (ECF Nos. 122 at 14-18, 122-

7    1.) To start, Defendants proffer evidence that Southwest is subject to the Secretary of

8    Transportation's jurisdiction because Southwest is "a motor private carrier, *i.e.*, one who

9    transports "property ... for sale, lease, rent, or bailment." *Klitzke*, 110 F.3d at 1468 (citing

10   49 U.S.C. § 10102(13)(C)). Specifically, Alan Benavides swears that Southwest is in the

11   business of providing concrete pumping in Nevada and surrounding states, which

12   involves moving the concrete and pumping equipment on large trucks on public highways

13   to clients' job sites. (ECF No. 122-1 at 2.) The closest Plaintiffs get in opposition to this

14   evidence is their statement that Southwest's business license is for 'Construction-Non

15   Contractor.' (ECF No. 123 at 13.) But Plaintiffs do not even argue this fact means that

16   Southwest is not subject to the Secretary of Transportation's jurisdiction.[8] (*Id.*) And

17   logically, the name of Southwest's business license does not establish Southwest falls

18   outside the Secretary's jurisdiction because—as noted above—motor private carriers like

19   Southwest that transport their own property (concrete) for sale on public highways fall

20   under the Secretary's jurisdiction. *See Klitzke*, 110 F.3d at 1468. In sum, Southwest has

21   proffered evidence establishing it satisfies the first requirement for entitlement to the

22   Motor Carrier Act exemption as described in *Featherston*, 2018 WL 4088001, at *1.

23   As to the class of work involved in Plaintiffs' jobs, *see id.* (describing this as the

24   second requirement), Benavides swears that all Plaintiffs except for Wadkins were

25   employed as either drivers, driver's helpers, loaders, or mechanics whose duties affect

26   the safety of motor vehicles in transportation on public highways in interstate commerce.

27   _____

28   [8]Indeed, Plaintiffs excerpt an explanation of 'motor private carriers' that facially applies to Southwest's operations on the very same page of their response. (ECF No. 123 at 13.)

12

1    (ECF No. 122-1 at 4.) This constitutes some evidence that the class of work these

2    Plaintiffs were involved in qualifies Southwest for the Motor Carrier Act. Indeed, these job

3    titles are explicitly listed in the pertinent regulation. *See* 29 C.F.R. § 782.2 ("driver, driver's

4    helper, loader, or mechanic"); *see also Wright*, 2019 WL 1446946, at *3 (finding the

5    exemption applied to "shuttle-bus drivers"). Moreover, Benavides also swears in his

6    declaration that Plaintiffs (again, except for Wadkins) were directly involved in operations

7    affecting the safety of the huge pumping trucks driven on public highways. (ECF No. 122-

8    1 at 5.)

9    Benevides further swears, supported by fuel logs and a spreadsheet showing that

10    Southwest's jobs were in several different states, that Southwest engaged in interstate

11    commerce. (*Id.* at 5-6; *see also id.* at 29-37 (fuel logs documenting gas fill-ups in various

12    states), 39-40 (documenting out-of-state jobs).) And he swears, supported again by an

13    excel spreadsheet, that the pumping trucks involved in all these interstate operations

14    weigh more than 10,000 pounds. (*Id.* at 6; *see also id.* at 39-40 (listing weights of more

15    than 10,000 pounds).) In sum, Defendants have met their initial burden to show that

16    Southwest did not have to pay most of the Plaintiffs overtime because Southwest is

17    entitled to the Motor Carrier Act exemption to FLSA's overtime requirements. *See Wright*,

18    2019 WL 1446946, at *3 (reaching a similar finding); *Featherston*, 2018 WL 4088001, at

19    *4 (same); *Klitzke*, 110 F.3d 1465, 1470 ("Klitzke therefore is not covered by the FLSA").

20    And Plaintiffs fail to effectively oppose summary judgment. Plaintiffs make some

21    sort of implicit waiver or estoppel argument in arguing that Defendants did not raise the

22    applicability of the Motor Carrier Act exemption until after the close of discovery (ECF No.

23    123 at 13), but Defendants effectively rebut this argument by pointing out in reply that

24    Defendants raised the Motor Carrier Act exemption to FLSA's overtime requirements as

25    an affirmative defense (ECF Nos. 130 at 3 (citing ECF No. 62 at 9)). Plaintiffs otherwise

26    block-quote Bates' deposition testimony to the effect that he was upset and surprised

27    when he learned he would not be paid overtime. (ECF No. 123 at 13-15.) But as the Court

28    found above, Southwest was not required to pay Bates overtime. In addition, to the extent

Plaintiffs are asserting a state-law claim analogous to their FLSA claim for failure to pay overtime, that claim also fails, and Defendants are entitled to summary judgment on it. *See Featherston*, 2018 WL 4088001, at *4 (making a similar finding).

Turning to Wadkins' claim for unpaid overtime, Defendants argue Southwest was not required to pay her overtime because she was an administrative employee. (ECF No. 122 at 17-18.) Defendants support this argument with Benavides' declaration and by reference to a Department of Labor fact sheet defining an exempt, administrative employee as, "a salaried employee whose duties include the exercise of discretion and independent judgment with respect to matters of significance." (*Id.* at 17 (citing ECF No. 122-1 at 82)); *see also* ECF No. 122-1 at 7 (asserting Wadkins was an administrative, exempt employee because her duties, "included the exercise of discretion and independent judgment with respect to matters of significance.").) Plaintiffs' only response to this argument is a quote from Wadkins' deposition where she attempts to downplay her level of responsibility and discretion but also states, "I was the dispatcher and I was like the hub of the organizing of paper to get to the bookkeeper." (ECF No. 123 at 15.) This does not create a genuine dispute of material fact with Benavides' sworn statement that her duties included the exercise of discretion and independent judgment because the reasonable inference to draw from her statement that she was the 'hub of the organizing of paper' is that her view of her own job is consistent with Benavides' sworn statement. The Court accordingly finds that Southwest was not required to pay Wadkins overtime as an administrative employee. Thus, the Court grants Defendants summary judgment as to Wadkins' unpaid overtime claim.

In sum, Defendants are entitled to summary judgment on all Plaintiffs' claims for unpaid overtime.

### 3.    Waiting Time Penalties

Defendants next argue they do not owe Plaintiffs any waiting time penalties because, per their Motor Carrier Act exemption argument, they do not owe Plaintiffs any unpaid wages. (ECF No. 122 at 18.) Plaintiffs do not respond to this argument. (ECF No.

123.) "The failure to oppose a motion for summary judgment does not permit the court to enter summary judgment by default, but the lack of a response is not without consequences." *Wright*, 2019 WL 1446946, at *2. The consequence here is that Defendants are also entitled to summary judgment on Plaintiffs' waiting time penalties claim. Defendants' argument is logical, and Plaintiffs simply present no argument to rebut it.

### 4.    Intentional Misrepresentation

Defendants then argue they are entitled to summary judgment on Plaintiffs' intentional misrepresentation claims because Defendants did not owe them any overtime, so Plaintiffs' theory underlying this claim that Defendants defrauded them out of overtime wages is not viable. (ECF No. 122 at 18.) Plaintiffs counter that they have raised significant factual allegations 'showing this case is ripe for trial on the merits,' but instead of elaborating on that argument, transition to more pages of block quotes of deposition testimony. (ECF No. 123 at 15-20.) In the quoted deposition testimony, Bates explains that his intentional misrepresentation theory is based on his view that he should have been paid overtime, Lux discusses how other people signed his timecards and he felt that was fraudulent, Matthis contents that some paychecks were fraudulent, Hymes contends someone else signed his timecards, and finally Byrd similarly contends that someone else signed his timecards. (*Id.* at 15-20.) Plaintiffs wrap up by contending that Plaintiffs were defrauded because Southwest did not pay them overtime wages. (*Id.* at 20.) Defendants argue in reply that Plaintiffs' argument proves Defendants' legal point that their fraudulent misrepresentation claim fails. (ECF No. 130 at 4-5.) The Court agrees with Defendants.

Since Southwest did not owe Plaintiffs overtime, Plaintiffs were not damaged when they did not receive it. "[D]amage to the plaintiff as a result of relying on the misrepresentation" is an element of the tort. *Barmettler v. Reno Air, Inc.*, 956 P.2d 1382, 1386 (Nev. 1998). Plaintiffs cannot satisfy this element because Defendants did not owe them overtime pay. Defendants are accordingly entitled to summary judgment on

1    Plaintiffs' fraudulent misrepresentation claim and Defendants' motion is thus granted to

2    that extent.

3                        **5.    Tortious Discharge**

4           Shifting gears, Defendants contend they are entitled to summary judgment on

5    Bates' tortious discharge claim against Southwest primarily because he was not fired, he

6    quit, and secondarily because he did not leave his employment at Southwest for any

7    reasons that violate public policy. (ECF No. 122 at 18-21.) Plaintiffs counter that Bates

8    was fired for refusing to participate in illegal activity including insurance fraud, relying

9    again on Bates' deposition testimony. (ECF No. 123 at 20-25.) As to this claim, the Court

10   agrees with Plaintiffs that genuine disputes of material fact exist as to whether, and if so,

11   why, Bates was fired—rendering summary judgment inappropriate.

12          "An employer commits a tortious discharge by terminating an employee for

13   reasons that violate public policy." *Allum v. Valley Bank of Nevada*, 970 P.2d 1062, 1064

14   (Nev. 1998). A plaintiff can prevail on a tortious discharge claim if the evidence shows "he

15   reasonably suspected, in good faith, that [the defendant(s)] participated in illegal

16   conduct." *Id.* at 1067. But the plaintiff bears a preponderance burden to show a direct

17   causal connection between "his refusal to participate in arguably illegal conduct, and his

18   termination." *Id.* at 1069.

19          As noted, Defendants first contend that Bates was not fired, he quit, which would

20   negate one element of tortious discharge. (ECF No. 122 at 18-21.) *See also Allum*, 970

21   P.2d at 1064 ("by terminating an employee…"). Defendants point to the declarations of

22   Benavides and several other Southwest employees who all say he quit. (ECF No. 122 at

23   18.) However, Bates testified at his deposition that, "when I was trying to come back I got

24   a phone call from Chad Zampedri stating that they were moving a different direction and

25   that I was no longer coming in to work anymore, and I said, 'Well, nobody's told me that,'

26   and it was all over pay." (ECF No. 123 at 21.) Drawing all inferences in Bates' favor, as

27   the Court must at summary judgment, *see Kaiser Cement Corp. v. Fishbach & Moore,*

28   *Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986) (citation omitted) (stating that the Court must

                                                16

1  evaluate the evidence this way), Bates is testifying here that he was fired. There is
2  accordingly conflicting testimony as to whether he was fired that must be resolved at trial,
3  and summary judgment would be improper.

4          Defendants next argue that exceptions to the 'at-will employment rule' are narrow
5  in an apparent attempt to suggest that it will be difficult for Bates to prevail on his tortious
6  discharge claim (ECF No. 122 at 18-20), but "the type of employment—either at-will or by
7  contract—is immaterial to a tortious discharge action." *Allum*, 970 P.2d at 1064. The Court
8  accordingly rejects that argument as unpersuasive.

9          Defendants finally argue that three versions of Bates' tortious discharge theory fail,
10 but the Court disagrees as to at least one of these theories—Bates' alleged termination
11 for "refusing to participate in insurance fraud." (ECF Nos. 23 at 19 (as alleged in the
12 complaint), 122 at 21 (making the argument).) And in making this argument, Defendants
13 argue, "[i]t is not enough for an employee to merely believe that his employer was violating
14 the law." (*Id.* at 21.) But this argument is not quite correct because Bates can prevail on
15 a tortious discharge claim if the evidence shows "he reasonably suspected, in good faith,
16 that [the defendant(s)] participated in illegal conduct." *Allum*, 970 P.2d at 1067. And Bates
17 testified at his deposition that he believed Benavides was engaging in insurance fraud,
18 and that he was pushed out for refusing to participate in it. (ECF No. 123 at 23-25.) Bates
19 has accordingly presented some evidence that he reasonably suspected, in good faith,
20 that a principal of Southwest was participating in illegal conduct. The linkage between
21 Bates' refusal to participate in the illegal activity he suspected, and his termination, is not
22 entirely clear, but the Court finds Bates has proffered enough evidence such that
23 summary judgment is inappropriate at this time.

24          Defendants' motion is accordingly denied as to Bates' claim for tortious discharge
25 against Southwest. That claim will proceed against Southwest.

26 ///

27 ///

28 ///

17

1
2

### 6.    The Davis-Bacon Act ("DBA") and Contract Work Hours and Safety Standards Act Claim ("CWHSSA")

3    Defendants next move for summary judgment on Plaintiffs' claim for failure to pay
4    overtime and prevailing wages under the DBA and CWHSSA because, based on a
5    declaration from Benavides, Southwest has always paid prevailing wages, maintains an
6    approved tracker to keep track of its payment of prevailing wages, and Southwest has
7    never been accused of, or investigated for, failure to pay prevailing wages. (ECF No. 122
8    at 21-22; *see also* ECF No. 122-1 at 7 (swearing as such).) And as Defendants note in
9    reply (ECF No. 130 at 7), Plaintiffs do not specifically respond to this argument in their
10    response. Because Plaintiffs do not offer any evidence explicitly in response to
11    Defendants' proffered evidence that Southwest follows its obligations under these
12    statutes, the Court concludes that Defendants are entitled to summary judgment on this
13    claim, and grants Defendants' motion accordingly.

14    ### 7.    Conversion

15    Defendants then argue they are entitled to summary judgment on Bates'
16    conversion claim against Benavides because Benavides never wrongfully exercised
17    dominion over Bates' tools; he directed Southwest to file an interpleader action to resolve
18    the question of ownership over the tools, which was the appropriate thing to do given the
19    circumstances. (ECF No. 122 at 22-23.) Defendants further note that the tools were
20    returned to Bates as soon as the interpleader action resolved. (*Id.* at 22-23.) Plaintiffs
21    counter that the fact that the tools were returned by court order does not exonerate
22    Benavides for holding onto the tools and argue that Bates was harmed because his tools
23    were damaged, and he was unable to work as a mechanic while Benavides held onto his
24    tools. (ECF No. 123 at 26-29.) Plaintiffs include excerpts of Bates' deposition testimony
25    consistent with these arguments. (*Id.*) Defendants reiterate in reply that filing an
26    interpleader action was the right thing to do under the circumstances. (ECF No. 130 at
27    7.) The Court agrees with Defendants.

28    ///

1    While both parties' citation to pertinent caselaw is lacking, filing an interpleader
2    action when a dispute over property arises appears to be the correct thing to do, and
3    could defeat a conversion claim—as Defendants argue here. More specifically, in *Lopez*
4    *v. Javier Corral, D.C.*, 367 P.3d 745, 2010 WL 5541115, at *6 (Nev. 2010), the Nevada
5    Supreme Court affirmed a lower court's finding that an attorney had committed conversion
6    when he had kept some disputed funds in his trust account. *See id.* However, the Nevada
7    Supreme Court wrote, "if Lopez [the attorney] believed there was a dispute between the
8    patient and Corral [the adverse party], as he now argues, he should have filed an
9    interpleader action pursuant to NRCP 22." *Id.* (citing *Achrem v. Expressway Plaza Ltd.*,
10   917 P.2d 447, 450 (Nev. 1996)). And indeed, *Achrem* sanctions the same approach—
11   when a dispute arises about property ownership, file an interpleader action. *See* 917 P.2d
12   at 450.

13   Bates' contention that Alan Benavides unlawfully deprived him of his tools by filing
14   an interpleader action is accordingly incorrect. (ECF No. 123 at 26.) Moreover, Bates
15   does not appear to dispute that a dispute had arisen about ownership of the tools—
16   specifically, Southwest got a letter from the tool manufacturer's credit company claiming
17   an ownership interest in the tools. (ECF No. 122-1 at 8-9 (explaining how the dispute
18   arose and why Benavides filed the interpleader action).) Benavides accordingly did the
19   right thing in filing the interpleader action. *See supra*. For this reason, Benavides did not
20   "wrongfully exert[] [dominion] over [Bates'] personal property" when he filed the
21   interpleader action regarding Bates' tools. *Winchell v. Schiff*, 193 P.3d 946, 950 (Nev.
22   2008). Benavides is—and by extension, all Defendants are—thus entitled to summary
23   judgment on Bates' conversion claim. Defendants' motion is also granted to this extent.

### 8.    Dismissal of Most Defendants

25   In the remaining sections of their motion, Defendants argue the Court should
26   dismiss Plaintiffs' claims against Jordana and Zachary Buchanan, Lilibeth Benavides,
27   Allan Benavides, ACJ Consulting, LLC, Top Water Holdings, LLC, and AEB Enterprises,
28   LLC because these people and entities did not employ Plaintiffs, and except for Alan

Benavides, there are basically no allegations against them in the operative complaint. (ECF No. 122 at 23-25.) Plaintiffs do not address these specific arguments but make the conclusory statement that their 'claims against all defendants should remain viable' because they cited deposition testimony in their response brief. (ECF No. 123 at 29.) The Court again agrees with Defendants to the extent it matters.

Plaintiffs did not point to any evidence that any of these people or entities employed them, and it is true that the operative complaint contains no real allegations against anyone except for Southwest and Alan Benavides. But regardless, the only claim that the Court finds should proceed following this order, *see supra*, is Bates' tortious discharge claim against Southwest—which, as alleged, was only asserted against Southwest. (ECF No. 23 at 19.) For clarity, all Defendants except for Alan Benavides and Southwest are dismissed from this case without prejudice because Plaintiffs have not rebutted Defendants' contention that Plaintiffs were not employed by them and there are no allegations against them anyway. And as noted above, Alan Benavides is entitled to summary judgment on Bates' conversion claim. So, Bates' only remaining claim for tortious discharge is proceeding against Southwest only.

### D. Motions to Dismiss

The arguments raised in Defendants' earlier-filed motions to dismiss entirely overlap with the arguments addressed above as to Defendants' later-filed motions for summary judgment. (*Compare* ECF Nos. 28, 31 *with* ECF No. 122 and the discussion *supra*.) Defendants' motions to dismiss are accordingly denied as moot given the Court's rulings above.

### IV. CONCLUSION

The Court notes that the parties made several arguments and cited several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the motions before the Court.

///

It is therefore ordered that Defendants' first motion to dismiss (ECF No. 28) is denied as moot.

It is further ordered that Defendants' second motion to dismiss (ECF No. 31) is denied as moot.

It is further ordered that Plaintiffs' motion to strike and enter a default (ECF No. 121) is denied.

It is further ordered that Defendants' motion for summary judgment (ECF No. 122) is granted in part, and denied in part, as described herein. In sum, only Bates' tortious discharge claim against Southwest will proceed to trial.

It is further ordered that all Defendants except for Alan Benavides and Southwest are dismissed from this case without prejudice.

It is further ordered that Plaintiffs' motion to strike (ECF No. 125) is denied.

It is further ordered that Defendants' motion to extend time (ECF No. 129) is granted *nunc pro tunc.* The Court considered Defendants' response to Plaintiffs' motion to strike and enter a default.

It is further ordered that the Court finds it appropriate to refer this case for a settlement conference under LR 16-5 before United States Magistrate Judge Nancy J. Koppe. Judge Koppe will issue further orders regarding the settlement conference. If this case does not settle at the settlement conference, the joint pretrial order is due within 30 days of the date the settlement conference is held.

DATED THIS 17th Day of July 2024.

MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE